Case number 090144C of Waukegan v. Princeton Excess and Surplus Line Insurance Company You are? Jill Lewis on behalf of the Appellants. Lewis? Yes, Jill. Ms. Lewis, okay. And you are? Adam Fleischer on behalf of Princeton Excess and Surplus Line Insurance Company. Okay, 15 minutes, 15 minutes. You can save up, Ms. Lewis, any portion you wish. You're here on behalf of the City of Waukegan and the Individual Insurance, is that correct? That's correct. May it please the Court, again, my name is Jill Lewis, and I'm representing the City of Waukegan and the individual employees of the city. All right, I'm going to call the insurer Princeton. Princeton denied coverage on late notice. Here's our arguments in response to that. First, the notice provisions only apply to the City of Waukegan and not the individual employees. However, what was the function of the City of Waukegan vis-à-vis the recovery for its officers and elected officials? Was there any direct dealing with these elected officials? Was there any direct recovery by these city officials? Or was the city recovering indemnification for its indemnification of the city officials? That's not clear from your materials at all yet. Okay, I think I do the power list. It seems to be, from what the response was to the arguments, that it was the city that the carrier dealt with at all times. That the interests of the elected officials were, so to speak, indirect or vicarious, in that the city indemnified them and recovered from the carrier the amount which they had to outlay to indemnify these parties. And if so, in that case, then the duty of notice pervades to whatever secondary interest these officials would have had since the carrier is, in fact, indemnifying the city, albeit for its indemnification of the elected officials. So what are the factors? All right, I think that Princeton is responsible for covering the city. If you can give me an answer to my... I can give you an answer. No, you're giving me a statement of law. I really want a statement of facts here. Was there direct dealing or was the dealing indirect? Did the officers make independent recovery or were they indemnified by the city? And the city then sought indemnification under the policy. That's what I want to know at this point. And then you can talk to your heart's content. Here's the answer to your question. Princeton was going to indemnify, if that day comes, the city, if it's found liable, and the individuals, if they're found liable. It's not like the individuals are going to pay the city and the city is going to go back to Princeton. I mean, once the city goes over its 150, it's Princeton. Okay? And any indemnity dollars that might come down the road are going to come from Princeton on behalf of either the city or the individuals. Did the individuals deal for themselves in their negotiations with Princeton or was the dealing here only with Waukegan? I don't know what you mean by those. They're negotiations. I mean, here's what happens. The city gets a complaint that served upon it on October of 2004. And you send it to custody. I'm sorry? You send it to custody. And they put it to Custard. They're, you know, the service organization that's supposed to handle those things. Sure, I know. You have a suit against them, don't you? Because they didn't tender the notice when they were supposed to, right? That's absolutely correct. We're covering all of our bases here. Well, you should. Exactly. Thank you. Here's the thing. If Custard, if the city, if the individuals, if anyone had looked at this policy, okay, which is what you do when you're in charge. But, you know, vis-a-vis, vis-a-vis Princeton, you can't use Custard, can you? As a defense? I'm not using Custard as a defense right now. Well, okay, you're not. Here's what I'm saying. I'm saying that if you look at the language of the policy that they wrote, okay, it says it's good. Do you find an ambiguity in it? I'm sorry? Do you find an ambiguity in it that leaves you notice requirements? I think there is ambiguity, and I think that it specifically applies only to the named insured, which is you. And in this case, it's the city of Waukegan. They acknowledge it doesn't apply to the individuals, but, like Justice Borden here has commented. But who has to give the notice? It doesn't apply to them, but who has to give the notice then for them? Apparently, under the policy, only the city of Waukegan has to give notice. Only the named insured. And if the city doesn't give that notice, then any other insureds lose, don't they? No, because if Princeton wanted notice of any individual insureds, it should have said. You mean the coverage is broader for other insureds than it is for the village of Waukegan? No, I don't think coverage is broader. It is, because if they don't have to accept this requirement of notice, then they're getting coverage that the village doesn't even get. I think that this is nothing new. I mean, notice provisions apply to some insureds, and they apply to other insureds. You're talking about the national fire case, which talks about the distinction between additional insureds and named insureds, and said that the notice provision applies to the named insured, but not to the additional insured. And the question is, is this case any different with regard to the city officials? And my questions to you were, who is the entire course of dealing in this case is with whom? With the city? Did Princeton ever deal with the individual parties here as such? Did they actually sue in their own rights as insureds rather than as indemnities of the city? Well, I think that they are suing as insureds under this policy. They're not the named insured. They're not you. And I think that this case is exactly like the national case. Incidentally, are they named in the policy, or are they simply referenced in the policy as officers or elected officials? They are considered insureds under the who is insured provision. Who is an insured? The named insured, that's you, that's the city of Waukegan. And then any employees acting within the scope of their employment, they're insureds. They're not the named insured. Under the Princeton policy, there's a distinction between the named insured and any other insured. And we've all seen a ton of insurance cases. And these policies are applied very, very strictly as written. And there's a reason why. Because insureds cannot be expected to read between the lines. And in this case, Princeton wants the city and its employees to read between the lines and say, well, okay, we know we just said that the named insured had to give us notice, but we really want notice if any insured is sued. And if they wanted that, they should have put it in their policy, and they didn't. And who does the you in the policy refer to? The named insured. The named insured, that's her argument. What's your best case for distinguishing between additional insurance and the named insured on the notice issue? What's your best case? The case that I cited. Then that's the only. There are other cases. Well, you should have that case at the tip of your fingers, American National Fire. I'll give it to you. It's 343 Elapsford 102. I wanted to hear it from her. I already gave her enough trouble. Okay. No, I'm sorry. But that's basically an ambiguity case, isn't it? That's not the case. Did that case involve additional insured who didn't get notice? It involved an additional insured who did not get notice, and the court held that under the first two provisions it was not required to get notice because those only applied to the named insured or you. I can't even find it in my memory. It's at page 13 in your brief and 14. Okay. But we still – why don't you go on now with as far as the city of Waukegan itself is concerned? Well, as far as – You're throwing in the towel on the initial contention that the 18-month delay, this entitles you to recovery for Waukegan. I am not throwing in the towel. Your argument there basically is that they can't show any prejudice by the delay. Well, that's one of the arguments. Again, if you go to the policy, you know, I'm an insured and I get my complaint and I say, oh, my gosh, I look at the policy and I say, what do I need to do? And I go down and it says, okay, any event, claim, or suit, all right, that's when I have to give notice of a suit. That's the first time suit appears. I have to give notice that when I reasonably believe it's covered and could exceed the applicable self-insured retention, which is $150,000, okay? So Waukegan gets it. They look at the policy. They say, or Custer, whoever, the attorneys, they look at it and they say, well, we only have to give notice to Princeton because it's a suit if it's going to exceed the $150,000 SIR. When it did, when it got to that point, they did notify them. So you're reiterating your confusion argument, except that this policy seems to be, notwithstanding what other case, there's one other case that you cite and we'll deal with that, but this policy says you have to report this, you have to give us notice in the, as soon as an event happens which requires notice. These events are the following, an event seeking discrimination or violation of civil rights. Then it goes on and says any event that you reasonably believe is covered by Part A and then any event where it's reasonably expected to exceed the policy. Is there any question in any adult mind that an event that involves civil rights violations is an independent event and doesn't, and is not nullified or suddenly swallowed up by a provision of an event that requires, that involves a certain amount of risk of money? Is there any real question that there's going to be any confusion about that? Well, I think if you look at the entire provision as a whole and you take all those individual paragraphs and put them together, I think it does make sense. Oh, come on, you had an insurance manager. You're suing this person, this company called Custard, which, you know, you had insurance professionals, was it Vukovic or whoever, you know, who dealt with insurance all the time. Is he going to have any question as to what event triggers a duty to notify? I mean, is that a serious argument? I do think it is. Okay. I have to tell you. It's in your brief. I have to tell you. There we are. It's in your brief. And you also have some cases that come close to saying that. Right. I mean, the thing is, in this sort of policy where, you know, it's an excess policy, it comes after an SIR, you know, the courts distinguish between primary and excess and who needs notice and who doesn't and what's reasonable and what's not. You know, and if you look at the policy. Aren't those coverage provisions negotiated? And isn't the premium adjusted to reflect those risks and the extent to which the company is taking on the risk and requires notice? Isn't it obvious that if you're a public employer, if you're a public employer and you have a separate section in the policy devoted only to civil rights litigation, that it's segregated for a reason? It's not. We're not talking about a separate portion. There is no separate civil rights. This all falls within the notice provision. No, I'm talking about the way the policy is drafted. Each of those coverages are negotiated and premiums are paid. And when a notice provision says, an event of civil rights disobedience, number one, and then goes on number two, any event involving this and any event involving that, is somebody who has any degree of sophistication going to think that somehow this is all garbled, that when it talks about civil rights being its own event, that the one doesn't mean anything because it's merged into two and two is merged into three. I mean, that's kind of a tough argument to resist knocking about. The GL coverage, the public official coverage, these provisions apply to everything. So I don't know if they negotiate. You can't just say that. You're not being as precise as you are in your brief, as a matter of fact. That's part of the problem I think we're facing with you right now. It's fairly clear that the reason that civil rights is mentioned specifically as an event, there are probably two very obvious reasons for it. One, the insured is a public agency with enormous exposure to civil rights litigation. And two, everybody in the insurance industry is aware of the fact that it always involves or most times involves fee-shifting provisions, which lifts the liability of the insurer way up because they're not only looking at damages, they're looking at attorney fees. Okay? So that's why it's there, it would seem to me. And that would be obvious to anybody who sat down and negotiated the policy, as you said. On behalf of the city of Waukegan, I want to make sure that I am covered for this kind of exposure. My home insurance policy, I don't think, contains a civil rights provision. Right? And for a good reason. It's very unlikely that somebody is going to sue me for a civil rights violation if they slip and fall on my sidewalk. That's correct. Okay? That's probably true. I think that part of the problem here is that the city… I think part of the problem here is your relationship with Custard and the fact that they're probably the real party in interest, but they're you for all practical purposes in dealing with Princeton. Well, and it's not just Custard. It's, you know, they go hire brokers to negotiate all of these things, and they get policy as they get it. I think we're pretty well up to speed on your position. We need to hear from Princeton. Mr. Fleischer. Fleischer, is that correct? Am I pronouncing it correctly? Sure. Why don't you start at the hard part? What about those individuals? Why are they entitled… Why can they be… Why can their coverage be rejected since they have no notice obligation? If I may, I'd like to answer that first just by citing the facts of this case and then a little bit more broadly why it makes sense beyond the facts of this case. The facts of this case… Yes, but you have to justify it under American national fire unless you're asking us to reject it. American national fire has nothing to do with this case, Your Honor. That's a completely different situation. Well, it has a contractor who is… Well, you say that… A subcontractor is the name insured, and a contractor is an additional issue. Go ahead. Why don't you try to explain? Sure. Let me get to the facts first. You asked before something about who was paying actual defense costs and the damages. Who is the actual indemnity here? That was something, actually, that the trial court raised very early in the case and asked us to go take some discovery. We served requests to admit, which are part of the record and specifically listed on page 13 of our brief, and the city has admitted that each one of those individuals has paid not one penny of defense for expenses in this case, that the city is the party in interest. So what? So they have a benefactor, but they're still insured. And if they are insured, tell me, does the contractor, who is the official insured in the American National Fire case, has he paid anything? On the contrary. He wants the subcontractor to insure him against any joint liability or liability of the subcontractor themselves, and they don't pay anything. It's a completely different situation, and let me explain why. Okay. Given an additional insured situation, the additional insured is a third party that has no relationship whatsoever to the named insured. A different contracting company, a different leasing company, what happened? That company steps forward and says, we would like coverage rights under your policies insured, and we want the ability to make a claim under your policy. And they get a certificate of insurance. The American National case specifically talks about the fact that this third party had a certificate of insurance. They asked for the right to make the claim. They had the responsibility to make the claim. And, in fact, when that case looked at the notice provision, what they said is that, well, notice provision 1 and 2 applies only to the named insured, not to the additional insured. But notice provision 3 applies to the additional insured. You didn't comply with it. You had the certificate. You had the opportunity. What notice provision in this case applies to the mayor and to any other officials other than the corporate body politic here? Well, and that gets to the reason that this case is different than an additional insured situation. In a situation where you have a large corporation or a municipality whose employees or public officials are insureds under a policy, the notice obligation for that policy falls to the named insured, in this case the city. The insurance industry doesn't act independently insured by the policy so that their insurance is, in fact, you're saying, if I'm hearing you correctly, that it's derivative of Waukegan's and consequently lives or dies by what Waukegan does. That's basically what you're saying. I think that's right, Your Honor. I wouldn't use the word derivative. Well, I'm using it, though. I mean, I'm using it. I'm sure I believe you. The government would prefer the word agent. Their insurance depends on the city of Waukegan notifying Princeton in order to take insurance under that policy. That's exactly right. That's the way the policy is drafted. And this is not a case of an additional insured. Correct. And it's not just the city of Waukegan. But they're named as additional insured. No, they're not named as additional insured. They're insured under the policy. They are you. They are defined under you. No, Your Honor, you're not saying that, are you? You're not saying that they're you. No, you're excluding them. Your argument is that they don't count. That is, that the you is Waukegan, and then it's that you whose notice will determine the status of them. But they are not the you. Correct. If I may, there's three terms that are being kind of interchangeably used here that have very different meanings. Additional insureds are third parties that ask for a right to make a claim under the insurance contract, have nothing to do with this case. And that's what that one case that's cited. American National, which is never in the 10 years, 11 years since it's come down has been used in the context of Waukegan. So who are these officials? They are insureds under the policy, just insureds. But they're not insureds who are mandated to give notice. Correct. And that's, as I said, Your Honor. But if the name insured doesn't give notice under the policy, they don't get coverage. Correct. Well, that's your position. Correct. And if I may, I wanted to explain to you the facts of why that made sense, and I did because these folks are not out of any money and we have requests to admit. I also wanted to explain to you a little bit more broadly why that makes sense. You could imagine it's not just the named officials. It's any employee of the city acting in the course of his or her employment. So if a city employee is out guarding them somewhere and backs over someone's foot. That would require 5,000 different people to give notice. Certainly. And that person realistically is expected to go to the city and say, I got injured. That person is not expected to have. Because they have no idea of their own viability necessarily. Of their own insurance coverage. Well, they would also probably, I suppose if I'm helping you argue at this point, only to make sure that I'm following you, they would not have their fingers on the, or their ear to the ground to know when they're at risk. I think that's right, and that's exactly why, as I was explaining before, I think we've now kind of put the bow on it. The gardener for the city of Waukegan who gets injured or causes an injury, is in a completely different situation because of the insurance coverage knowledge than the additional insurance company in American National that specifically demanded an insurance certificate. And that's the best example as to why, not only based on the facts here, these individuals haven't suffered any insurance loss, but based on the way the policy is supposed to work, it's the responsibility of the city and their contractually mandated service organization, Custard, to make these notifications to PESA. And in this case, they didn't do it, at least not for 18 months after the suit was filed. We're going to take the liberty of directing you a little bit here because of the late hour. Please. I think you want to address the ambiguity issue. Sure. And I'm done with the first issue, Your Honor. And I'll address the ambiguity issue pretty quickly. There's something that's kind of missing in this ambiguity argument. And I think that when you look at the late notice cases in Illinois, ambiguity is often discussed in the context of the reasonableness of the excuse. If this was really something ambiguous and it was hard to figure out whether there was coverage and what to do, then that plays into the reasonableness of the excuse. Well, the ambiguity plays into the argument that it's confusing as to whether Category 1, an event involving civil rights, retains its own integrity as a trigger of a notice requirement or whether it is absorbed into the later requirements, which seem to be more generic, that simply speak of the amount of exposure that is identified as inhering in the risk. And there is a case that supports that notion and that where there are two provisions, one specific as to hit-and-run, you know, in that particular – I forget the name of it offhand. Sure. But it's a hit-and-run case with a long explanation of the requirements of notice in the event of a hit-and-run, a 24-hour turnaround to the police plus this, plus that. Then there's another provision that simply deals with the extent to which that claim is going to reach the excess layer. Right. And the court held that that's ambiguous because the insured is not going to know whether you've let go of the hit-and-run notice requirement, so as to only hold them responsible for the requirement generally that goes to the – that informs him as to the exposure of the excess layer. Sure. In short, in short, shouldn't there be some kind of a public policy, A, with respect to governmental agencies, for one, who are self-insured, but more importantly, where there are notification obligations when it comes to a secondary policy? Why, you know, obviously if you're primary – if you're the primary insurer, you should get very prompt notice, but are you entitled to very prompt notice if you're a secondary insurer? I can't speak in terms of public policy, but under this particular insurance policy – It was reasonable. Reasonable or practical? As soon as practical, which one was it? One question – In 18 months, the court declared as a matter of law was not. Right? That's what the judge determined. Yes. And if I could just address the ambiguity argument, it's Princeton's position that the provisions are not ambiguous for all of the reasons that you previously put to Ms. Lewis, and I could address those, but there's a point that I don't want to get lost, and that is one causation. Ms. Lewis said if you get this policy and you look at it and are trying to figure out what to do, then this might be ambiguous, and you asked her question. Well, that's where I have a serious question, with respect to your use of that argument, namely by telling us that the honchos that dealt with the policy were not deluded. And Vukovic wasn't confused, and the woman didn't even look at the policy. Correct. And I'm asking whether that matters at all when you're dealing with ambiguity in a contract, whether the test is objective or subjective. Well, there's tests for two different reasons. On one hand, if you're measuring – if you're talking about the reasonableness of their delay under the Northbrook line of cases, then clearly you have to look at what the folks knew or didn't know and looked at or didn't know. You can't say the situation – But they make the argument that if it's ambiguous, they don't take it into that area. They say if it's ambiguous, it's construed against the carrier. No, I don't think – since it's an insurance company, and after all, insurance companies are targets. Right? Sure, Your Honor. First of all, on the issue of the – For the record, I'm using colorful language. Target has become a very good word. I'm using colorful language. On the issue of contra pro forensum, I don't think that that's fully in the record as to whether or not it would even apply. I do think that the trial court examined pretty responsibly the sophistication of the parties here in order to determine the degree to which such a conclusion should be reached. The Chancellor, Peter Flynn, did refer to that. But the question is, can he when you're dealing with contract interpretation? Well, and again, Your Honor, the two points here – one is for purposes of judging the reasonableness of the delay, absolutely. And the ambiguity is not an excuse for the reasonableness of the delay here. It can't be. On that question. Okay. On the second issue, without regard to the reasonableness of the delay, you look at the fact, can Princeton simply enforce this? That doesn't involve their subjective knowledge of the city. Can Princeton enforce this? And I think that's where you look at it, and for all the reasons you laid out earlier, absolutely. It's clear that in 2F2, those enumerated instances that Princeton wants to know about as soon as practical, when they're filed, makes sense. And it's not confusing that that's a different category than the category above it. The city's corporate witness on notice agreed that that's not ambiguous. There's basically an admission of non-ambiguity in Vukovic's inferred or implied admission. That seems to be what you're saying. Well, and I think, Your Honor, this ambiguity argument is one raised by counsel, not one raised by the city. The city took the opposite position in deposition. He wasn't testifying as an individual. I didn't ask for Vukovic's death. I didn't even know who he was. He's testifying as the corporate representative most knowledgeable on the notice issue and the city's position on it. I wouldn't disparage contributions of counsel to counsel. Well, I don't agree with this. No, I'm pulling your chain. I meant it as a compliment that just because it's the lawyer that adds it doesn't make it less conclusive. Well, it certainly is a just advocacy, and I mean nothing else by it other than the fact that that wasn't the reason for the delay here. That's not a realistic confusion when you look at the policy. The contract interpretation requires you to give meaning to each portion of the policy. What else could that second section of the enumerated offenses mean? Obviously, it would nullify the earlier section. One of them would certainly nullify the other if you were to agree. But if you're dealing with professionals in this kind of policy, presumably it could be something else, but I was hoping I'd get some help to make that distinction under ordinary contract law. Well, and again, I think in the trial court you said that it might be a different situation, maybe under an individual contract, but here you have not only a sophisticated entity, you have a risk manager with 30 years of experience, and you have a company that's contractually required to be the guardian of these notice issues, presumably, because they know what they're doing. So this is not an issue of lack of sophistication. Thank you, Mr. Fleishman. Thank you. Ms. Lewis, a final word, and a word, or two, maybe. All right. I think that if Princeton wanted the city of Waukegan to be the guardian of the notice issues, then it should have put it in its policy, and it didn't. It just said you. The ambiguous argument, I think that the fact that the custard woman didn't ever read it and Bigovich said it wasn't ambiguous, it's totally irrelevant. Why? Can't it be an admission? You could admit to an issue of law, can't you? How can a person say, I can't even say, oh, that's ambiguous or not? Maybe my interpretation's wrong, and sure enough, it was ambiguous. You could if you're representing a party, because you don't question. If you're a party giving an expert opinion, you're bound by that opinion, even though it would be made out of total ignorance. That's under the rules of admission. Because the policy behind it is nobody would be fool enough to give an expert opinion to their detriment if it was, in fact, not something that they felt was well-grounded. That's what Wigmore says. All righty. Well, then the last thing I'll say is I just want to make it clear that we're dealing with, as far as the late notice, not late notice of the lawsuit, but late notice of the event, which was whatever. And I think it's important, as you brought up, Justice Cahill, that they don't have any prejudice, and they've never claimed that they were prejudiced at all. And, you know, if it doesn't matter, well, they wouldn't have done anything differently, so what does it matter? I mean, there has to be some consideration. Isn't that correlated or inversely correlated to the lax of time? Let's put it this way. As I understand the case law, and correct me if I'm wrong, prejudice is a component in dealing with the timeliness of the notice, but it's not necessarily a dispositive component. And its contribution to the mix that you're going to analyze becomes lessons to the extent that the time lag increases. So the greater the time lag, the less we focus on prejudice. That's how I understand the law. And when you have 18 months, you look to the fact, what do the other cases say about 10 months, about 12 months, about 6 months? Right. I think all the cases turn on the facts, and I do think prejudice, I don't think it matters if it's 20 months or 2 months, if there's prejudice or not prejudice. But at any rate, thank you so much. Counselors, thank you both.